

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 9, 2022

**BY ECF AND EMAIL**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re: *United States v. Xavier Chalas*, 22 Cr. 167 (RMB)

Dear Judge Berman:

The defendant in this case, Xavier Chalas, is scheduled to be sentenced on December 20, 2022, at 9:00 a.m., having pled guilty to being a felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1), 924(a)(2), and 2. For the reasons explained below, the Government submits that a sentence toward the low end of the United States Sentencing Guidelines range of 77 to 96 months' imprisonment is warranted in this case.

## I. Offense Conduct and Procedural History

On or about November 1, 2021, New York City Police Department ("NYPD") officers responded to the scene of a shooting in the vicinity of Madison Avenue and East 132nd Street in Harlem. Presentence Investigation Report ("PSR") ¶ 18. When officers arrived, they found Chalas lying barefoot on the sidewalk outside of an apartment building located at 2123 Madison Avenue. PSR ¶ 19. He had been shot in the left leg. PSR ¶ 19. Officers applied aid and called for Emergency Medical Services ("EMS"). *See* PSR ¶¶ 19–20. While they were waiting for EMS to arrive, they asked Chalas where the shooting had occurred. PSR ¶ 20. He replied, in sum and substance, that he did not know. PSR ¶ 20.

Law enforcement searched the scene of the shooting, including inside 2123 Madison Avenue. PSR ¶ 23. There, they found three 9mm cartridges, one 9mm shell casing, and two Nike sneakers. PSR ¶ 23.

EMS arrived and took Chalas, accompanied by one of the NYPD officers, to a hospital in Harlem. PSR ¶ 20. While in the emergency room at the hospital, the officer watched hospital staff cut and take off Chalas's clothes and place them in a bag. PSR ¶ 21. The officer then opened the bag and took out Chalas's bloody pants and vest. *See* PSR ¶ 22. As the officer was inventorying

December 9, 2022
Page 2

Chalas's items, he found a magazine that contained seven live rounds of 9mm Luger ammunition in Chalas's right vest pocket.  PSR ¶ 22.

On the day of his federal arrest, Chalas told another defendant that he had participated in a shootout with a group who had tried to rob him and had thrown his gun.  PSR ¶ 26.

On March 16, 2022, a grand jury in this District returned an indictment (the "Indictment") charging Chalas with possessing ammunition after a felony conviction, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.  Although Chalas was initially released pretrial, he violated his home incarceration over 25 times.  *See* Dkt. 15.  This Court then detained him on or about April 26, 2022.  *See* Dkt. 24.

On June 9, 2022, Chalas pled guilty, pursuant to a *Pimentel* letter that outlined a Guidelines range of 110 to 137 months' imprisonment, based on an offense level of 25 and a criminal history category of VI.  The Government now agrees with Probation and the defense that the proper Guidelines range is 77 to 96 months.[1]  Under this updated calculation, the offense level is 21, and the criminal history category is VI.

On September 7, 2022, the Probation Department issued the PSR.  That report calculated the applicable Guidelines range as 77 to 96 months—the same calculation that the Government now asserts is correct.  The Probation Department recommended a sentence of 77 months' imprisonment, followed by two years of supervised release.  For the reasons discussed below, the Government believes that a sentence at the low end of the Guidelines range of 77 to 96 months' imprisonment is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

## II.  Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone.  Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing.  *Booker*, 543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of

---

[1] The Government agrees that the offense level is 21 because the four-point enhancement for using ammunition in connection with a felony offense is not appropriate, as Chalas said that he participated in a shootout with a group that was attempting to rob him.  Under New York law, a person may use deadly force if he or she reasonably believes that another person is attempting to commit a robbery.  *See* N.Y. Penal Law § 35.15(2)(b).  In addition, a two-point decrease in criminal history points from 19 to 17 is warranted because Probation has verified that Chalas was not on parole at the time of the instant offense, as the Government's criminal history records had initially reflected.

December 9, 2022
Page 3

sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)–(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant;

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### III.   Discussion

Chalas seeks both a downward departure in his Guidelines range and a downward variance in his ultimate sentence.  Neither is appropriate in this case.  Instead, the Government respectfully submits that a sentence at the low end of the Guidelines range of 77 to 96 months' imprisonment is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

### A.  A Downward Departure Is Not Warranted

Chalas argues that a downward departure from criminal history category VI to criminal history category V under is appropriate under U.S.S.G. § 4A1.3.  *See* Dkt. 37 ("Def. Submission") at 5–6.  He claims that such a departure is warranted to eliminate his youthful offender adjudications, which total six criminal history points.  *See id.* at 6.  But a downward departure of this nature is not appropriate and would not account for the seriousness of Chalas's criminal history.

Contrary to what Chalas argues, youthful offender convictions can and should be included in a defendant's criminal history calculation under the Guidelines.  *See, e.g.*, *United States v. Reinoso*, 350 F.3d 51, 54 (2d Cir. 2003); *United States v. Driskell*, 277 F.3d 150, 158 (2d Cir. 2002); *United States v. Matthews*, 205 F.3d 544, 548–49 (2d Cir. 2000).  As the Second Circuit noted in *United States v. Cuello*, 357 F.3d 162, 167 (2d Cir. 2004), the New York State youthful offender statutory scheme served a "narrow purpose."  The youthful offender provision, as New York State courts have noted, "emanate[s] from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts"; the purpose "was not to shield a criminal from an overview of his criminal background in determining a proper sentence." *Id.* (citing New York State cases).

December 9, 2022
Page 4

The youthful offender statutory scheme gave Chalas a second chance by allowing him to avoid lengthy sentences for prior serious crimes, including for assault in the second degree, attempted assault in the third degree, assault in the third degree, and criminal possession of a weapon in the fourth degree. These are not minor crimes. But instead of taking the opportunity to turn his life around, Chalas escalated his criminal conduct and incurred five additional criminal convictions.

The Guidelines themselves make clear that downward departures under Section 4A1.3 should be rare. Application Note 3, for instance, provides an example of when a downward departure could be appropriate: when a "defendant had two prior misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3, Application Note 3. That is far from what we have here. In this case, Chalas repeatedly committed crimes at age 18 and after. If anything, the fact that he has received the benefit of multiple youthful offender adjudications could be a basis for an *upward* departure rather than a downward departure. As the Guidelines explain, a defendant's criminal history may be more serious than what is reflected in his criminal history records, which is "particularly true in the case of younger defendants (*e.g.*, defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment yet who may actually pose a greater risk of recidivism than older defendants)." *Id.*, Background Note.

Chalas makes two particular arguments as to why a downward departure could be warranted. First, he points out that he was sentenced on the same day for four of his youthful offender convictions. *See* Def. Submission at 5. But this is appropriate under the Guidelines because these were separated by intervening arrests—they are all independent incidents. U.S.S.G. § 4A1.2(a)(2). Second, he argues that receiving two points for a prior youthful offender adjudication where he received a sentence of one year overstates his criminal history. *See* Def. Submission at 5. Two points are appropriate for this sentence under Section 4A1.1(b) and do not overstate his history, especially given the serious nature of the conviction, which was for assault in the second degree.

While Chalas's age and youthful offender convictions may be considered in an analysis under Section 3553(a), they are simply not grounds for a downward departure under the Guidelines.

### B. A Sentence Toward the Low End of the Guidelines Range Is Sufficient But Not Greater than Necessary

The Government respectfully submits that the 3553(a) factors weigh in favor of a sentence at the low end of the Guidelines range of 77 to 96 months' imprisonment. The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others, to protect the public from further crimes of the defendant, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A)–(C).

The offense here was serious. Chalas possessed a magazine loaded with seven live 9mm Luger bullets, which could cause great harm if paired with a gun. He did this despite having eleven prior convictions and knowing that his possession of ammunition was illegal. Although he was

December 9, 2022
Page 5

the victim of a shooting, after his arrest, Chalas told a fellow defendant that, on the day he was shot, he participated in a shootout with a group who had tried to rob him and that he had thrown his gun.  One 9mm shell casing and three 9mm Luger cartridges—the same caliber and make as the bullets found on Chalas—were found inside 2123 Madison Avenue, the scene of the shooting.  Chalas's participation in a shootout inside an apartment building in broad daylight in the Bronx is extremely dangerous and put many in harm's way.  It is sheer luck that innocent bystanders were not also injured.  Chalas's sentence must account for the severity of this conduct.

A significant sentence is also necessary to afford adequate deterrence.  Although Chalas is young, he has committed a substantial number of crimes already.  This is also far from Chalas's first experience with the criminal justice system.  He has an extensive criminal history, which includes convictions for violent crime.  Chalas has five non-youthful offender convictions, which include attempted robbery, assaults, possessing contraband in prison, and burglary.  Chalas's record also reflects six youthful offender convictions, including for several assaults and criminal possession of a weapon in the fourth degree.  Chalas is 24 years old and has been consistently involved in the criminal justice system since age 17.  He has served jail time on several occasions and has received sentences for up to three years' imprisonment.  Yet these sentences did not deter him here—and show that his sentence must be longer than three years' imprisonment in order to make an impact.

Chalas's criminal conduct cannot be taken lightly.  At a time when gun violence is so prevalent, the need for general deterrence, in particular, is striking.  *See United States v. Cavera*, 550 F.3d 180 (2d. Cir. 2008) (district court's decision to consider New York market conditions in order to accomplish the goal of general deterrence in a gun trafficking case was not an abuse of discretion).  A significant sentence would send a message to Chalas and others like him that possession of ammunition and participation in shootouts will not be tolerated.

Chalas has continually shown a lack of respect for the law and a substantial sentence is necessary to further that goal.  Not only is this reflected in Chalas's extensive criminal history, but it is also apparent in his conduct since March 2022.  This Court even revoked Chalas's bond because, after just three weeks of pretrial release, Chalas left his apartment without permission over 25 times and lied to Pretrial Services about his whereabouts.  He is also wanted in connection with an additional assault, committed on March 2, 2022, in which he punched the victim, knocking them both to the ground and leaving the victim unconscious for a short time.  *See* Dkt. 29.

The defense raises several potentially mitigating factors, including Chalas's family circumstances, mental health issues, need for medical treatment for his gunshot wound, his age, and his desire to be a father to his one-year-old daughter.  These factors accounted for the Government's recommendation—in accordance with Probation—that a sentence at the low end of the Guidelines range is appropriate.  But they do not diminish the seriousness of Chalas's conduct.  Although he is young and suffers from mental health issues, he must still be given a sentence that sends a deterrent message, because the prior sentences he has received, which gave rise to his 17 criminal history points, have not yet had an impact on his behavior.  Further, he committed this offense knowing that he was a father.  Rather than focusing on his young family, he was out on the street with a loaded gun.  Accordingly, his parenthood does not weigh in favor of a lesser sentence.

December 9, 2022
Page 6

In sum, a sentence at the low end of the Guidelines range would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

**IV.    Conclusion**

For the reasons set forth above, the Government, in accordance with Probation, respectfully requests that the Court impose a sentence at the low end of the Guidelines range of 77 to 96 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:  _____
Madison Reddick Smyser
Assistant United States Attorney
(212) 637-2381

Cc:    Marisa Cabrera, Esq. (by ECF)